# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RITA BATHIARD** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ISLAMIC REPUBLIC OF IRAN** *et al.*, <br><br> Defendants. | Case No. 1:16-cv-1549 (CRC) |

## MEMORANDUM OPINION

On April 18, 1983, a suicide bomber crashed a truck full of explosives into the entrance of the U.S. Embassy in Beirut, Lebanon, setting off a blast that killed 52 people. Among those who died was Cesar Bathiard, a Lebanese citizen working at the Embassy. His widow and daughters have now brought suit against the Islamic Republic of Iran under the Foreign Sovereign Immunities Act, alleging that Iran was responsible for the attack and Bathiard's resulting death. Since Iran has not appeared, the Bathiards now seek a default judgment. But because this suit was not filed within the applicable statute of limitations, the Court will deny their motion and instead dismiss the case.

## I. Background

Cesar Bathiard worked at the U.S. Embassy in Beirut for a little over a decade. Mot. Default J. Aff. 1, ¶ 4 (Aff. for Estate of Cesar Bathiard). In April 1983, he was employed by the Department of State as a driver for Robert S. Dillon, then the U.S. Ambassador to Lebanon. Id. On April 18, 1983, Bathiard was in the lobby of the embassy, waiting for Ambassador Dillon to come downstairs, when an explosives-laden truck crashed into the building and detonated. Id. ¶ 5. He was killed instantly. Id.

Over thirty years later, in August 2016, Bathiard's widow Marcelle El-Helou and his two daughters Rita Bathiard and Pascale Mazarei (collectively "the Bathiards") filed suit on behalf of themselves and Cesar Bathiard's estate against the Islamic Republic of Iran and the Iranian Ministry of Information and Security (collectively "Iran"). The Bathiards alleged that Iranian military and intelligence operatives financed and directed Hezbollah, the militant group that carried out the embassy bombing. Compl. ¶¶ 6, 10. They claimed that Iran had "complete operational control" of Hezbollah and provided high-level technical support and funding to Hezbollah without which the April 1983 embassy bombing would not have been possible. Id. ¶¶ 6–7. Their suit seeks to hold Iran liable for injuries stemming from Cesar Bathiard's death under a provision in the Foreign Sovereign Immunities Act ("FSIA") that authorizes suits by U.S. citizens or employees and their families against foreign sovereigns who are state sponsors of terrorism for their involvement in acts of terrorism, see 28 U.S.C. § 1605A.

In September 2017, the Bathiards served Iran with process through diplomatic channels. When Iran failed to appear, they obtained a notice of default on November 29, 2017, and subsequently moved for a default judgment. Prior to resolving their motion, however, the Court directed the parties to file supplemental briefing addressing whether this suit was timely under the applicable statute of limitations. The Court now concludes that it was not.

## II. Legal Standard

The FSIA provides the sole basis for obtaining jurisdiction over a foreign state in a United States court. The statute generally shields foreign sovereigns from being haled into court, but carves out exceptions allowing certain kinds of lawsuits to proceed. See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co., 137 S. Ct. 1312, 1320 (2017). One such exception greenlights lawsuits against foreign countries that have been designated by the U.S.

government as a state sponsor of terrorism when the plaintiff seeks money damages for personal injury or death resulting from the defendant country's involvement in "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A. As originally enacted in 1996, this provision applied solely to U.S. nationals; it was amended in 2008 to also allow federal government employees who are not nationals to bring suits for personal injuries and deaths occurring while acting within the scope of their employment. See Sheikh v. Republic of Sudan, 172 F. Supp. 3d 124, 126 (D.D.C. 2016).

Under the FSIA, a plaintiff may obtain a default judgment when the defendant fails to enter an appearance. 28 U.S.C. § 1608(e); see also Fed. R. Civ. P. 55(b)(2). To prevail on such a motion, a plaintiff must establish her right to relief "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Thus, rather than accept unsupported allegations as true, the Court must examine the plaintiff's allegations and any proof provided to ensure the plaintiff has carried her burden. See, e.g., Bluth v. Islamic Republic of Iran, 203 F. Supp. 3d 1, 17 (D.D.C. 2016).

**III. Analysis**

The Court directed supplemental briefing on the question of whether the Bathiards' suit is timely under the FSIA. In their supplemental briefing, the Bathiards argue that their suit is timely either (1) as an original action brought within 10 years of the date their cause of action arose or (2) as an action related to a timely-filed original action involving the same bombing. See 28 U.S.C. § 1605A(b). The Court finds that their suit is not timely under either theory. Before addressing the arguments on timeliness, however, the Court will begin with a threshold

argument raised by the Bathiards: whether it is proper for the Court to *sua sponte* consider whether they filed their suit within the statute of limitations.[1]

    A.  Consideration of the Statute of Limitations

The statute of limitations is typically an affirmative defense that is waived unless a defendant promptly raises it. See, e.g., Worley v. Islamic Republic of Iran, 75 F. Supp. 3d 311, 328 (D.D.C. 2014). This principle applies to the statute of limitations in the FSIA, which the D.C. Circuit has held is nonjurisdictional. See Owens v. Republic of Sudan, 864 F.3d 751, 801-04 (D.C. Cir. 2017), petition for cert. filed (March 2, 2018).

That said, the Supreme Court has recognized that in some situations "courts have the discretion, but not the obligation, to raise on their own initiative certain nonjurisdictional barriers to suit." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 277 n.14 (2010); see also, e.g., Day v. McDonough, 547 U.S. 198, 199 (2006) (holding that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition"). Such *sua sponte* consideration "might be appropriate in special circumstances," such as when a defense implicates interests beyond those of the parties. Arizona v. California, 530 U.S. 392, 412 (2000); see also United States v. Mitchell, 518 F.3d 740, 750 (10th Cir. 2008) ("[W]hen a rule implicates judicial interests beyond those of the parties, it may be appropriate for a court to invoke the rule *sua sponte* in order to protect those interests."). The Court concludes that such

---

[1] The Court need not address whether the Bathiards have established that they meet the requirements to bring suit under the FSIA prior to addressing the statute of limitations. The D.C. Circuit has held that whether a plaintiff has met the FSIA's requirements implicates the Court's statutory jurisdiction, not its Article III jurisdiction. See Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 728–29 (D.C. Cir. 2008).

special circumstances are present and that it is appropriate to exercise its discretion to consider the statute of limitations defense here.

First and foremost, this case involves the FSIA and an absent foreign sovereign. As such, unlike a run-of-the-mill civil suit, it implicates international relations and comity—"the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states," Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522, 543 n.27 (1987). The FSIA was crafted to "codify [a] careful balance between the immunity historically accorded to foreign sovereigns and holding them accountable, in certain circumstances, for their actions." Rubin v. Islamic Republic of Iran, 138 S. Ct. 816, 822 (2018). The balance struck in that statute—which includes a statute of limitations provision—reflects the wisdom of the two political branches of government on the sensitive question of when foreign sovereigns should be subject to suit in U.S. courts.

Thus, the statute of limitations encoded in the FSIA serves to protect more than simply the interests of individual litigants; it furthers international relations and "the reciprocal foreign litigation interests of the United States." Clodfelter v. Republic of Sudan, 720 F.3d 199, 209 (4th Cir. 2013) (affirming district court's *sua sponte* consideration of res judicata in a FSIA case); see also Owens, 864 F.3d at 768 (considering waived arguments in a FSIA case because of, among other reasons, the "possible effects [of the case] on international relations"). Consequently, the Court concludes that "[c]omity in the face of an absent foreign sovereign presents a special circumstance permitting sua sponte consideration" of a statute of limitations defense. Clodfelter, 720 F.3d at 209; see also Maalouf v. Islamic Republic of Iran, 2018 WL 1567583, at *4–7 (D.D.C. March 30, 2018) (holding that international relations and comity justified consideration

5

of a statute of limitations defense in a FSIA motion for default judgment), appeal docketed, No. 18-7052 (D.C. Cir. April 16, 2018).

The Court's conclusion is buttressed by the statutory provision regarding default judgments in FSIA cases. Under the FSIA, before entering a default judgment the Court must determine whether the plaintiff has established her claim or right to relief by satisfactory evidence. See 28 U.S.C. § 1608(e). More than in the usual case, in a FSIA case the Court is "bound by a duty to scrutinize the plaintiff's allegations." Reed v. Islamic Republic of Iran, 845 F. Supp. 2d 204, 211 (D.D.C. 2012). This textual requirement "that a district court consider whether the plaintiff has met its evidentiary burden suggests that a district court may properly take a close look at a plaintiff's claim," including by considering *sua sponte* a defense like the statute of limitations. Clodfelter, 720 F.3d at 210; see also Maalouf, 2018 WL 1567583, at *5 ("Given this independent screening requirement, it is appropriate for a district court to address clear violations of the FSIA statute of limitations.").

The Bathiards recognize the foreign relations issues involved here, as well as the fact that the judiciary "has assumed a deferential role in dealing with foreign nations." Pls.' Suppl. Br. at 3. But these factors counsel towards the opposite conclusion, they contend. Had Congress wanted federal courts to "exempt foreign sovereigns from the normal rules of procedure," it would have done so. Id. at 2. Rather, in their view, "Congress extended no special treatment on this issue to a defaulting sovereign and clearly contemplated that none be given." Id. at 3.

The Court is cognizant that federal courts have "traditionally 'deferred to the decisions of the political branches . . . on whether to take jurisdiction over actions against foreign sovereigns.'" Rubin, 138 S. Ct. at 821 (citation omitted) (alteration in original). And it appreciates that had Congress wanted the statute of limitations to be non-waivable, it could have

6

said so, such as by making it jurisdictional. Yet, the Bathiards' approach still raises concerns over comity and international relations even in the face of Congress's decision to make the statute of limitations nonjurisdictional. The Bathiards have brought their suit over *thirty years* after the incident at issue occurred. And "if a twenty-nine year (or a thirty-three year) gap is acceptable, there is little reason to prohibit suits brought forty, fifty, or more years after the fact." Maalouf, 2018 WL 1567583, at *6. Whatever Congress intended in passing the FSIA, it surely did not intend to allow suits—and judgments with all their attendant steps for enforcement— against foreign sovereigns without temporal limitations whatsoever. If the Court were to ignore the statute of limitations in every case, it would open up the "possibility of nearly endless litigation" and the "murky foreign policy considerations of enabling untimely judgments." Id. The Court declines to do so.

At the end of the day, *sua sponte* consideration of affirmative defenses remains a discretionary choice. It may not be appropriate in every FSIA case. But in light of the several decades of time that have passed between the events at issue here and the filing of this suit, combined with the unsettling foreign policy implications of allowing suits and judgments against absent foreign sovereigns without any temporal limitations, the Court in this case will exercise its discretion to consider the statute of limitations *sua sponte*.

B. <u>Timeliness as a New Action</u>

Having decided to address the timeliness of this suit, the Court turns to the Bathiards' first timeliness argument: that the lawsuit was timely filed under the FSIA as an original action. The relevant provision of the FSIA states that "[a]n action may be brought or maintained . . . if the action is commenced . . . not later than the latter of (1) 10 years after April 24, 1996; or (2) 10 years after the date on which the cause of action arose." 28 U.S.C. § 1605A(b). The first

7

portion of this provision is irrelevant here, as the Bathiards filed suit well after April 2006. But they argue that their suit is timely under the second provision. They contend that their cause of action arose on January 28, 2008, the effective date of the amendments to the FSIA that gave the Bathiards the ability to file suit as relatives of non-citizen government employees. Because they filed suit within 10 years of that date, they say, the suit is timely.

The D.C. Circuit has not squarely addressed when a FSIA cause of action "arises," though it has characterized the Bathiards' argument as "rather strained," Simon v. Republic of Iraq, 529 F.3d 1187, 1194-95 (D.C. Cir. 2008), rev'd on other grounds sub nom. Republic of Iraq v. Beaty, 556 U.S. 848 (2009).[2] Other judges in this District, however, have declined to adopt the Bathiards' interpretation, ruling instead that a FSIA cause of action arises on the date of the relevant attack. See Sheikh, 172 F. Supp. 3d at 130–31; Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 397 (D.D.C. 2015). The Court agrees with these decisions.

As usual, the Court starts with the text of the statute. The Supreme Court has explained that, as a general matter, the phrase "cause of action arose" "incorporates the standard rule that the limitations period commences when the plaintiff has 'a complete and present cause of action.'" Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbard Corp. of California, 522 U.S. 192, 201 (1997) (citation omitted); see also Rawlings v. Ray, 312 U.S. 96, 98 (1941) ("The words 'after a cause of action shall accrue' in the Arkansas statute have their usual meaning and refer to 'a complete and present cause of action.'" (citation omitted)). "Unless

---

[2] The D.C. Circuit did state in Owens v. Republic of Sudan that "the plaintiffs' causes of action arose on August 7, 1998, the date of the embassy bombings" at issue in that case. 864 F.3d at 800. While this lends support to the Court's similar reading of the statute here, the decision in Owens did not reach the timeliness arguments raised by Sudan in that case and as such did not address how to interpret the statute of limitations provision at issue here. See id. at 804 (finding Sudan's arguments regarding timeliness forfeited).

8

Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." Bay Area Laundry, 522 U.S. at 201.

Since a plaintiff can only sue and obtain relief once all the factual elements of her claim are present, the ordinary understanding is that a cause of action arises once the final factual prerequisite to suit is met. For instance, in Bay Area Laundry the Supreme Court held that a statute of limitations in a pension statute did not begin to run on the date that an employer withdrew from a pension plan because employees could not bring suit at that time; rather, they had to wait for several additional factual events—the calculation of a debt and the employer's default on a payment— to occur first. 522 U.S. at 201–02. Similarly, the Supreme Court has held that the statute of limitations for a constructive discharge claim under Title VII does not begin running until the employee resigns, since only then does the employee meet the elements for a constructive discharge claim. Green v. Brennan, 136 S. Ct. 1769, 1776 (2016). In sum, a cause of action typically "arises" once all the factual elements for a claim have occurred. See Sheikh, 172 F. Supp. 3d at 128 ("[S]tatutes of limitations generally do not begin to run until a defendant has taken the final step that makes its conduct legally actionable.").

But wait, the Bathiards say. The Supreme Court in Bay Area Laundry also indicated that a cause of action does not arise until the plaintiff "can file suit." 522 U.S. at 201. Fixating on this language, the Bathiards contend that a cause of action does not arise *until a statutory cause of action exists*. After all, if there is no statute that provides a cause of action, then a plaintiff cannot file suit and obtain relief. Therefore, they conclude, the cause of action here did not "arise" until 2008, when the FSIA was amended to allow non-U.S. citizens like the Bathiards to bring suit under the terrorism exception.

9

While this argument is clever, it pulls the Supreme Court's language in <u>Bay Area Laundry</u> entirely out of context. Cases such as <u>Bay Area Laundry</u> and <u>Green</u> typically involve a question as to which of two *factual events* triggers the statute of limitations—the employer's withdrawal from the pension plan or the employer's default on a payment in <u>Bay Area Laundry</u>; the employee's resignation or the last discriminatory act in <u>Green</u>. The cause of action was complete, the Court held in both cases, when the last factual event necessary to bring suit occurred. The language in <u>Bay Area Laundry</u> thus says nothing about how the *existence* of a statutory cause of action relates to the running of a statute of limitations.

Moreover, the Bathiards' reading of the statute and the language from <u>Bay Area Laundry</u> would lead to a host of problems. In essence, the Bathiards' argument is that no cause of action ever "arises" until the statute creating the cause of action exists. Consequently, any time that Congress creates a new statutory cause of action with an analogously-worded statute of limitation, any plaintiff with a valid claim can bring it *no matter how long ago the relevant conduct occurred*.

The Bathiards' reading would effectively give every statute creating a new cause of action and including a similar statute of limitations unlimited retroactive effect. While Congress could do that if it wanted, the Court will not presume that in such statutes Congress intends to open the courthouse doors to any and all claimants regardless of how long ago the relevant conduct occurred without at least some indication of that intent. <u>See, e.g.</u>, <u>Davis v. U.S. Dep't of Justice</u>, 610 F.3d 750, 753 (D.C. Cir. 2010) ("There is a 'well-settled presumption' against giving statutes retroactive effect." (citation omitted)). This is particularly so in the context of a statute like the FSIA that implicates important concerns over foreign relations, comity, and foreign sovereignty—the Court will not assume Congress intended the foreign policy

consequences of unlimited retroactivity for suits against sovereign states without a clear indication. Because of the unlimited retroactive impact of the Bathiards' interpretation, the Court is disinclined to adopt it.

Even if it were so inclined, other tools of statutory interpretation cut against the Bathiards' reading of the statutory text as well. First, comparing the current statute of limitations with the pre-2008 limitations provision illustrates that Congress did not understand the phrase "date the cause of action arose" to have the meaning advanced by the Bathiards. Like the current version of the statute of limitations, the version in force from 1996 until 2008 provided that suits needed to be "commenced not later than 10 years after the date on which the cause of action arose." 28 U.S.C. § 1605(f) (2006). But unlike the present provision, it went on to state that "[a]ll principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period." Id.

If the phrase "date on which the cause of action arose" had the meaning offered by the Bathiards, it would make the equitable tolling provision unnecessary: if all plaintiffs had a ten-year window to file suit from 1996 because their cause of action did not arise until then, there would have been no need to toll the pre-1996 period when the foreign state had been immune from suit. The Bathiards' interpretation should therefore be avoided. See, e.g., Asiana Airlines v. FAA, 134 F.3d 393, 398 (D.C. Cir. 1998) ("A cardinal principle of interpretation requires us to construe a statute 'so that no provision is rendered inoperative or superfluous, void or insignificant.'" (citation omitted)). The only sensible remaining interpretation of the phrase "date on which the cause of action arose" in the prior version is the date of the attack at issue. And the Court should presume that Congress intended the identical language in the post-2008 version to have the same meaning. Cf. IBP, Inc. v. Alvarez, 546 U.S. 21, 34 (2005) (recognizing

11

"the normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning").

Moreover, Congress knows how to carve out a window allowing for suits that lacked a cause of action prior to the 2008 amendment. It did precisely that in the pre-2008 statute of limitations by providing for equitable tolling, which it did not do in the current version. And it provided for an alternative mechanism in the post-2008 statute of limitations by allowing plaintiff to bring suit within 10 years of a fixed date—1996. Congress's choice not to include language that would clearly have the meaning the Bathiards argue for here indicates that it did not intend to adopt their interpretation. Cf. Advocate Health Care Network v. Stapleton, 137 S. Ct. 1652, 1659 (2017) ("When legislators did not adopt 'obvious alternative' language, 'the natural implication is that they did not intend' the alternative." (citation omitted)).

Finally, the legislative history, which the Bathiards contend supports their reading, actually undercuts it. The Bathiards point to statements made by Senator Frank Lautenberg, the author of the 2008 amendments to the FSIA. In the cited statements, Senator Lautenberg criticized a court decision interpreting the pre-2008 statute of limitations. 154 Cong. Rec. S54 (daily ed. Jan. 22, 2008). He then stated that the intent of the pre-2008 statute of limitations was "to provide a 10-year period from the date of enactment of the legislation for all acts that had occurred at any time prior to its passage in 1996" and "to provide a period of 10 years from the time of any attack which might occur after 1996." Id. The amended version of the statute of limitations, he explained, "clarifies this intent." Id. Indeed it does: The Senator's comments— and particularly his focus on the "time of the attack"—further underscore that the phrase "date on which the cause of action arose" refers to the date of the underlying factual events, not the effective date of the 2008 amendments.

For all these reasons, the Court concludes that the "date the cause of action arose" means the date the factual events giving rise to the claim occurred. In the ordinary case, that will be when the attack at issue occurred. Here, that date was April 18, 1983. Since the Bathiards brought suit far more than 10 years after that date, their claims are untimely as an original action.

C. Timeliness as a Related Action

The Bathiards also contend that even if their action does not comply with the statute of limitations period for a new action, it should still be considered timely as a related action. To prevail on this argument, the Bathiards must satisfy two requirements: (1) that the original action to which their case is related was timely filed under the ten-year statute of limitations provision discussed above and (2) that the related action was filed within the separate statute of limitations period provided in section 1083(c)(3) of the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"). See, e.g., Owens, 864 F.3d at 799-800. This second provision requires a related action be commenced not later than the latter of 60 days after (1) the date of the entry of judgment in the original action or (2) the date of the enactment of the NDAA. National Defense Authorization Act for Fiscal Year 2008, § 1083(c)(3), Pub. L. No. 110-181, 122 Stat. 3, 343 (2008).

The Bathiards claim that their action is related to Dammarrell v. Islamic Republic of Iran, 281 F. Supp. 2d 105 (D.D.C. 2003), which sought relief for U.S. citizens who were injured or killed in the 1983 embassy bombing in Beirut. Even assuming that Dammarrell qualifies as a timely-filed related action that arose "out of same act or incident" as the present lawsuit,[3] the

---

[3] It is an open question in the D.C. Circuit as to whether a related action may be brought only by plaintiffs who previously filed an action under the pre-2008 version of the FSIA as opposed to anyone injured in the same attack. See Owens, 864 F.3d at 801; Van Benedin v. Al-Sanusi, 709 F.3d 1165, 1167 n.3 (D.C. Cir. 2013). The Court expresses no opinion on that issue.

13

Bathiards do not meet the requirement of the second statute of limitations in the NDAA. They filed suit on August 1, 2016, well beyond 60 days after either the entry of judgment in Dammarrell (September 7, 2006) or the enactment of the NDAA (January 28, 2008). Therefore, the Bathiards cannot rely on section 1605A's related action provision to support the claim that their suit is timely.

**IV. Conclusion**

For the foregoing reasons, the Bathiards have failed to establish that their lawsuit was filed within the statute of limitations period. The Court will therefore deny their motion for a default judgment and instead dismiss the case. A separate Order shall accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: June 29, 2018