**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **RITA BATHIARD** *et al.*, |
| Plaintiffs, |
| v. |
| **ISLAMIC REPUBLIC OF IRAN** *et al.*, |
| Defendants. |

Case No. 1:16-cv-1549 (CRC)

**MEMORANDUM OPINION**

On April 18, 1983, a suicide bomber crashed a truck full of explosives into the entrance of the U.S. Embassy in Beirut, Lebanon, setting off a blast that killed 52 people. Among those who died was Cesar Bathiard, a Lebanese citizen working at the Embassy. In 2016, his widow and daughters brought suit against the Islamic Republic of Iran under the Foreign Sovereign Immunities Act ("FSIA"), alleging that Iran was responsible for the attack and Bathiard's resulting death. When Iran failed to appear in the case, the Bathiards filed a motion for default judgment.

This Court, in June 2018, denied that motion after raising the FSIA's statute of limitations *sue sponte* and determining that the action was untimely. See Bathiard v. Islamic Republic of Iran, 317 F. Supp. 3d 134, 138–43 (D.D.C. 2018). In May 2019, the D.C. Circuit held that district courts do not have the discretion to raise the statute of limitations when a FSIA defendant fails to do so itself—and reversed and remanded this case and others. See Maalouf v. Islamic Republic of Iran, 923 F.3d 1095, 1115–16 (D.C. Cir. 2019). Back on remand, the Court, for the reasons that follow, will grant Bathiard's motion for default judgment and appoint a special master to make a recommendation on an appropriate damages award.

I.  **Background**

Cesar Bathiard was employed by the Department of State at the U.S. Embassy in Beirut for a little over a decade.  Mot. Default J. Aff. 1, ¶ 4 (Bathiard Estate Aff.).[1]  In April 1983, he was serving as a driver for Robert S. Dillon, then the U.S. Ambassador to Lebanon.  Id.  On April 18, 1983, Bathiard was in the lobby of the embassy, waiting for Ambassador Dillon to come downstairs, when an explosives-laden truck crashed into the building and detonated.  Id. ¶ 5.  He was killed instantly.  Id.

Over thirty years later, in August 2016, Bathiard's widow Marcelle El-Helou and his two daughters Rita Bathiard and Pascale Mazarei (collectively "the Bathiards") filed suit on behalf of themselves and his estate against the Islamic Republic of Iran and the Iranian Ministry of Information and Security (collectively "Iran").  The Bathiards alleged that Iranian military and intelligence operatives financed and directed Hezbollah, the militant group that carried out the embassy bombing.  Compl. ¶¶ 6, 10.  They claimed that Iran had "complete operational control" of Hezbollah and provided high-level technical support and funding to Hezbollah without which the April 1983 embassy bombing would not have been possible.  Id. ¶¶ 6–7.  Their suit seeks to hold Iran liable for injuries stemming from Cesar Bathiard's death under a provision in the FSIA that authorizes suits by U.S. citizens or employees and their families against foreign sovereigns who are state sponsors of terrorism for their involvement in acts of terrorism.  See 28 U.S.C. § 1605A.

---

[1] This background tracks verbatim the Court's previous recitation of the facts, see Bathiard 317 F. Supp. 3d at 136–37, save for the addition of procedural developments since that decision.

In September 2017, the Bathiards served Iran with process through diplomatic channels. See ECF No. 16. When Iran failed to appear, they obtained a notice of default on November 29, 2017, see ECF No. 18, and subsequently moved for a default judgment, see ECF No. 19. Prior to resolving their motion, however, the Court directed the parties to file supplemental briefing addressing whether this suit was timely under the applicable statute of limitations. After reviewing those submissions, the Court concluded the action was not timely and therefore denied the motion for default judgment. See Bathiard, 317 F. Supp. 3d at 143. The Court reasoned that "special circumstances"—including that FSIA suits "implicate[] international relations and comity" and that "several decades of time [had] passed between the events at issue here and the filing of this suit"—justified discretionary *sua sponte* consideration of the statute of limitations. Id. at 138–40.

Bathiard's case was consolidated on appeal with five others where the district court had raised the statute of limitations *sua sponte* and dismissed FSIA claims as untimely. Maalouf, 923 F.3d at 1103. The D.C. Circuit disagreed with that practice. Noting the background principle that parties must raise affirmative defenses or lose claim to them, the Circuit reasoned that the FSIA did not fit into the "small number of narrow, carefully defined contexts" in which courts can raise them on their own. Id. at 1109. Those contexts, the Circuit explained, "share a common, defining feature," namely "that the circumstances of a case must squarely implicate the institutional interests of the judiciary[.]" Id. at 1110. "And," it continued, "in none of these situations was the defendant on whose behalf the court acted entirely absent from the litigation." Id. Because the sovereign defendants in the cases had defaulted, the cases fell outside the orbit of those heretofore recognized exceptions. Id. at 1110–12 (explaining why *sua sponte* consideration is only appropriate where "judiciary's own interests are implicated and the

3

forfeiting party is present in the litigation"). The Circuit also explained why the "special circumstances" this Court and others found compelling, including the comity concerns, did not counsel in favor of *sua sponte* consideration of FSIA's statute of limitations. Id. at 1112–13.

On remand, then, there is no statute of limitations bar to Bathiard's claim. The Court therefore turns to considering whether Bathiard's motion otherwise satisfies the prerequisites for default judgment under the FSIA.

## II. Legal Standard

The FSIA provides the sole basis for obtaining jurisdiction over a foreign state in a United States court. The statute generally shields foreign sovereigns from being haled into court, but carves out exceptions allowing certain kinds of lawsuits to proceed. See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co., 137 S. Ct. 1312, 1320 (2017). One such exception greenlights lawsuits against foreign countries that have been designated by the U.S. government as state sponsors of terrorism when the plaintiff seeks money damages for personal injury or death resulting from the defendant country's involvement in "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A. As originally enacted in 1996, this provision applied solely to U.S. nationals; it was amended in 2008 to also allow federal government employees who are not nationals to bring suits for personal injuries and deaths occurring while acting within the scope of their employment. See Sheikh v. Republic of Sudan, 172 F. Supp. 3d 124, 126 (D.D.C. 2016).

Under the FSIA, a plaintiff may obtain a default judgment when the defendant fails to enter an appearance. 28 U.S.C. § 1608(e); see also Fed. R. Civ. P. 55(b)(2). "[E]ntry of a default judgment is not automatic." Goldstein v. Islamic Republic of Iran, No. 16-CV-2507,

2018 WL 6329452, at *2 (D.D.C. Dec. 4, 2018) (citation omitted).  First, the Court must consider whether it has subject-matter jurisdiction over the action, James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996), and whether it has personal jurisdiction over the defendants, Mwani v. bin Laden, 417 F.3d 1, 6–7 (2005).  Id.  Even then, a plaintiff must establish her right to relief "by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  Thus, rather than accept unsupported allegations as true, the Court must examine the plaintiff's allegations and any proof provided to ensure the plaintiff has carried her burden.  See, e.g., Bluth v. Islamic Republic of Iran, 203 F. Supp. 3d 1, 17 (D.D.C. 2016).  Generally, a party seeking to establish its right to relief "may rely upon uncontroverted factual allegations that are supported by affidavits."  Worley v. Islamic Republic of Iran, 75 F. Supp. 3d 311, 319 (D.D.C. 2014) (internal quotation marks and citations omitted).

### III. Analysis

#### A. Threshold Issues

First, subject-matter and personal jurisdiction must be assured.  "[S]ubject matter jurisdiction exists if the defendant's conduct falls within one of the specific statutory exceptions to immunity."  Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 12 (D.D.C. 2011) (citing 28 U.S.C. §§ 1330(a), 1604).  Section 1605A(a)(1) provides that a foreign nation loses its immunity where

> money damages are sought against [it] for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

Furthermore, the defendant foreign state must have been designated as a "state sponsor of terrorism" "as a result of such act" and "remain[] so designated when the claim is filed."  28

5

U.S.C. § 1605A(a)(2)(A)(i)(I). Finally, the "claimant or victim" must have been either a U.S. national, a member of the U.S. armed forces, or "otherwise an employee of the Government of the United States." Id. § 1605(a)(2)(A)(ii)(I–III).

Those requirements are easily satisfied here. Iran was a designated state sponsor of terrorism when the claim was filed; Cesar Bathiard, at the time of the April 1983 bombing, was employed by the Department of State as a driver for Robert S. Dillon, then the U.S. Ambassador to Lebanon; and the claims here, brought by Cesar's widow and his two daughters on behalf of themselves and his estate, stem from the injuries Cesar suffered in the attack. Bathiard Estate Aff. ¶ 4. That takes care of subject-matter jurisdiction.

The Court also has personal jurisdiction over Defendants. Personal jurisdiction "depends on whether the plaintiffs in this case effectuated service of process on the Iranian defendants consistently with 28 U.S.C. § 1608." Goldstein, 2018 WL 6329452, at *2; see Estate of Doe, 808 F. Supp. 2d at 12 ("[A] court can obtain personal jurisdiction over a defendant if the plaintiff properly serves the defendant in accordance with 28 U.S.C. § 1608."). Section 1608(a)(4) permits service "by sending two copies of the summons and complaint and a notice of suit . . . to be addressed and dispatched by the clerk of the court to the Secretary of State" who will then "transmit one copy of the papers through diplomatic channels to the foreign state." That is exactly what plaintiffs did here: the summons, complaint, and notice of suit were delivered to the Iranian Ministry of Foreign Affairs on September 27, 2017. See ECF No. 16.

B. Liability

Plaintiffs first ask the Court to take judicial notice of the factual findings and legal conclusions in prior cases that have established Iran's responsibility for the 1983 embassy bombing. See Mot. Def. J. at 2 (citing Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d

6

105 (D.D.C. 2003); Salazar v. Islamic Republic of Iran, 370 F. Supp. 2d 105 (D.D.C. 2005); Estate of Doe, 808 F. Supp. 2d 1. "Because of the multiplicity of FSIA-related litigation, courts in this District have frequently taken judicial notice of earlier, related proceedings." Fain v. Islamic Republic of Iran, 856 F. Supp. 2d 109, 115 (D.D.C. 2012); see, e.g., Bodoff v. Islamic Republic of Iran, 907 F. Supp. 2d 93, 96, 103 (D.D.C. 2012) (taking judicial notice of prior cases involving same 1996 Jerusalem bus bombing); Ben-Rafael v. Islamic Republic of Iran, 718 F. Supp. 2d 25, 28 (D.D.C. 2010) (1992 embassy bombing in Buenos Aires, Argentina); Valore v. Islamic Republic of Iran, 478 F. Supp. 2d 101, 104 (D.D.C. 2007) (1983 Marine barracks attack in Beirut).

In Estate of Doe, which involved the very same embassy bombing at issue here, Judge Bates noted this general practice and explained that

> Defendants' connections to Hizbollah have been explored at length in this jurisdiction, and it has uniformly been agreed that, in the relevant time period, Hizbollah received substantial funds and support from Iran via its Ministry of Information and Security and the Iranian Revolutionary Guard Corps. [Prior] opinions not only illustrate the general connection between Hizbollah and Iran, but also justify a specific finding that defendants provided support for the 1984 attack on the U.S. Embassy Annex in Lebanon. Relying on the pleadings and the above findings of other judges in this jurisdiction, this Court concludes that defendants provided "material support and resources" to Hizbollah in carrying out both the April 18, 1983 and the September 20, 1984 attacks on the U.S. Embassy and Embassy Annex in Beirut, Lebanon.

808 F. Supp. 2d at 15–16 (citations omitted). One such prior opinion, Dammarell, gave a particularly fulsome account of how Iran came to sponsor Hezbollah and how Hezbollah orchestrated particular attacks, including the 1983 embassy bombing. See 281 F. Supp. 2d at 108–113. The Court doubts it can improve on the account, and it need not try. It will adopt the findings of fact and legal conclusions of decisions like Dammarell and Estate of Doe that concluded the Iranian defendants in this case were liable for the embassy bombing.

This Court has elsewhere noted that "while the propriety of *taking* judicial notice [in FSIA cases] is plain, the question of what *effect* such notice" should have in the present case is not always obvious. Goldstein, 2018 WL 6329452, at *3 (D.D.C. Dec. 4, 2018). There is reason, for instance, to be wary of taking judicial notice of the *truth* of findings in default judgment proceedings, "where the record was developed without the 'full benefits of adversarial litigation,' and the 'findings thus lack the absolute certainty with which they might otherwise be afforded.'" Id. (quoting Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 58 (D.D.C 2010). Be that as it may, for the same reasons discussed in Goldstein—including that FSIA does not demand unimpeachable evidence, but merely satisfactory evidence, and that Iran's complicity in the embassy bombing is not subject to reasonable dispute—the Court has no trouble taking as true the factual findings and legal conclusions in decision like Dammarell and Estate of Doe.

Even so, the Court's conclusion that Iran is liable for the embassy bombing does not by itself provide a sufficient basis for entry of default judgment. Plaintiffs must also provide some proof that they suffered personal injury. See Goldstein, 2018 WL 6329452, at *4 (explaining that taking judicial notice of Iran's responsibility for attack did not suffice to establish liability to the particular plaintiffs). As discussed earlier, a party seeking to establish its right to relief "may rely upon uncontroverted factual allegations that are supported by affidavits." Worley, 75 F. Supp. 3d at 319 (internal quotation marks and citations omitted).

Each of the individual plaintiffs in this case have done just that. Cesar's daughter, Rita, submitted an affidavit on the behalf of his estate. In it, she avers that Cesar died in the 1983 bombing and that his death caused Rita, her sister Pascale, and her mother Marcelle to suffer "severe emotional stress." Bathiard Estate Aff. ¶ 8. Rita, in the supporting affidavit filed on her

8

own behalf, says she "suffered serious injuries in that terrorist bombing that continue to affect me to this day," including "extraordinary grief, mental anguish, and [emotional distress]." Mot. Default J. Aff. 2, ¶ 5. Marcelle and Pascale make identical representations in their personal affidavits. Id. Aff. 3, ¶ 6; id. Aff. 4, ¶ 6. Combining the conclusion that Iran provided significant support to Hezbollah in carrying out the April 18, 1983 bombing with the sworn affidavits attesting to Cesar's death in the bombing and the injuries his widow and children have suffered as a result thereof, the Court finds that Plaintiffs have established their "claim or right to relief by evidence that is satisfactory to the court." 28 U.S.C. § 1608(e). Therefore, the Court will grant Plaintiffs' motion for default judgment on the liability issue.

### C. Damages

The Court will appoint a special master to determine the appropriate measure of damages for Cesar's estate and each individual Plaintiff. "In determining the proper measure of damages, [t]he courts of the United States may appoint special masters to hear damages claims brought under the state-sponsored terrorism exception to the FSIA." Taylor v. Islamic Republic of Iran, 811 F. Supp. 2d 1, 17–18 (D.D.C. 2011) (quoting 28 U.S.C. § 1605A(e)(1)) (internal quotation marks omitted). The Court finds that appointing a special master in this case, as it has done in other multiple-plaintiff FSIA terrorism actions, would not create unreasonable expense or delay and would help efficiently resolve this action. See Fed. R. Civ. P. 53(a)(3); see also Taylor, 811 F. Supp. 2d at 17 (appointing a special master to assess damages claims in a multiple plaintiff FSIA case).

## IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' motion for default judgment. A separate Order shall accompany this Memorandum Opinion, along with a separate Order

9

detailing the appointment of a special master to make a recommendation to the Court on the issue of damages.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>July 29, 2019</u>